UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JUSTIN GRAHAM,

Plaintiff,

- against -

NEW YORK CITY, *et al.*,

Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-6546 (PKC) (CHK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Justin Graham brings this action against Defendants New York City, as well as New York City Police Department ("NYPD") Officers Rafael Musayev ("Musayev") and Samantha Raffo ("Raffo"), both in their individual and official capacities, advancing claims under: (1) 42 U.S.C. § 1983 ("Section 1983") for excessive force and failure to intervene, and (2) state law for assault and battery and *respondeat superior*. Currently pending before the Court is Defendants' Motion for Partial Summary Judgment on the failure-to-intervene claim, which Plaintiff brings solely against Defendant Raffo. For the reasons stated below, Defendants' Motion is granted.

## BACKGROUND

### I. Relevant Facts[1]

On July 31, 2021, Officers Musayev and Raffo were driving in their police vehicle along the intersection of 138 Avenue and 246 Street in Rosedale, Queens County, New York. (Defs.'

[1] Unless otherwise indicated, the facts in this section are not in dispute and are drawn from Defendants' Rule 56.1 Statement ("Defs.' 56.1"), Dkt. 44-1, Plaintiff's Counterstatement Pursuant to Rule 56.1 ("Pl.'s 56.1"), Dkt. 50-4, and from evidence submitted to the Court by the parties that was not included in the 56.1 statements. Any citation to a Local Rule 56.1 statement incorporates by reference the document(s) cited therein; where relevant, however, the Court may cite directly to an underlying document. The Court construes any disputed facts in the light most favorable to

56.1, Dkt. 44-1, ¶ 1; Am. Compl., Dkt. 48, ¶ 16.) The officers saw Plaintiff standing next to a four-wheel, all-terrain vehicle ("ATV"), which was next to a FedEx delivery truck. (Defs.' 56.1, Dkt. 44-1, ¶¶ 1, 3.)[2] The officers stopped to investigate and talk to Plaintiff. (*Id.* ¶ 5; Pl.'s 56.1, Dkt. 50-4, ¶ 3; Deposition of Rafael Musayev ("Musayev Dep."), Dkt. 44-7, at 32–33.) Officer Raffo, who was driving the police vehicle, stopped the car a few feet away from the ATV, such that Plaintiff was in front of the police car and slightly to its right-hand side. (*See* Defs.' 56.1, Dkt. 44-1, ¶¶ 4, 7; Musayev Dep., Dkt. 44-7, at 32–33; Raffo Body Camera Footage ("Raffo BC"), Dkt. 44,[3] at 00:52–58.)[4] Officer Musayev, who was in the passenger seat, first exited the car and approached Plaintiff. (Raffo BC, Dkt. 44, at 00:53–54.) Musayev was not holding his taser while inside the car or when opening the car door. (Pl.'s 56.1, Dkt. 50-4, ¶ 9.) Approximately one to two seconds later, Officer Raffo also exited the car and began to walk to the front of it. (Raffo BC, Dkt. 44, at 00:53–58.)

During the roughly three-to-four-seconds between Musayev opening the car door and Raffo exiting the car, Musayev drew his taser. (*See id.* at 00:58; Defs.' 56.1, Dkt. 44-1, ¶¶ 9–11,

---

Plaintiff, as the nonmoving party, for purposes of Defendants' Motion for Summary Judgment. *See Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016). However, where Plaintiff either (1) admits or (2) denies without citing to admissible evidence certain facts alleged in Defendants' Local Rule 56.1 statement, the Court may deem such facts undisputed. *See* Loc. Civ. R. 56.1(c)–(d).

[2] Though this factual dispute is not material, according to Officer Raffo, Plaintiff was initially seated on the ATV. (Deposition of Officer Raffo ("Raffo Dep."), Dkt. 50-1, at 18.)

[3] The footage was submitted to the Court electronically. (*See* Notice of Req. to Submit Electronic Evid., Dkt. 46 (indicating that the electronic evidence should be linked to Dkt. 44).)

[4] The timestamps included within the citations correspond to the actual time duration of the video as opposed to the time displayed by the body camera. The footage does not provide audio until 00:59.

18; Pl.'s 56.1, Dkt. 50-4, ¶¶ 10, 18.)[5] Musayev pointed the taser at Plaintiff, who, at some point, had mounted the ATV, started it, and crashed into the FedEx truck. (*See* Raffo BC, Dkt. 44, at 00:57–58; Defs' 56.1, Dkt. 50-4, ¶ 13.)[6] Musayev then fired the taser once at Plaintiff. (Raffo BC, Dkt. 44, at 0:58–59; Musayev Dep., Dkt. 44-7, at 100; Pl.'s Dep., Dkt. 44-6, at 28.) Musayev's taser could only fire once. (Musayev Dep., Dkt. 44-7, at 100–101; *see* Use of Conducted Electrical Weapons Patrol Guide, Dkt. 50-3.)

At the time Musayev fired the taser, Raffo was still on the other side of the police car from Plaintiff and Musayev, and ten to fifteen feet behind them. (*See* Raffo BC, Dkt. 44, at 00:58–1:00; Pl.'s 56.1, Dkt. 50-4, ¶ 7 (agreeing that ATV was ten to fifteen feet from police car).)[7] Approximately five seconds had elapsed since Raffo exited the car. (*See* Raffo BC, Dkt. 44, at 00:54–59.)

---

[5] As discussed *infra* n.12, Raffo claims to have seen Musayev draw his taser at another point, later in the incident.

[6] Plaintiff disputes this, and claims that only after being tased did he jump on his ATV to try and flee. (*See* Deposition of Justin Graham ("Pl.'s Dep."), Dkt. 44-6, at 26, 28–30.) For the reasons explained below, the Court does not adopt this fact for the purpose of summary judgment. *See infra* pp. 5–6, 11 n.15 (explaining the pertinent standard governing motions for summary judgment where video footage depicts the incident and finds this testimony contradicted by the body camera footage).

[7] While Plaintiff admits that the police car was between Musayev and Raffo as Raffo exited the video, (Pl.'s 56.1, Dkt. 50-4, ¶ 17), Plaintiff disputes that Raffo was still next to the police vehicle (approximately ten to fifteen feet away from Plaintiff and Musayev) when Musayev fired the taser, (*id.* ¶ 20). Plaintiff claims that "the vehicle was between Defendant Musayev and Defendant Raffo," not between Raffo, Musayev, and Plaintiff, and that such a conclusion would be an "impermissible inference," (*id.* ¶¶ 17, 20). However, the body camera footage makes clear that, at the time Musayev fired his taser, Raffo would have had to cross in front of the police car and take several steps forward to reach Musayev and Plaintiff. The Court therefore deems this fact undisputed for the purpose of summary judgment. *See infra* p. 5–6 (explaining the pertinent standard governing motions for summary judgment where video footage depicts the incident).

Plaintiff then jumped off the ATV and fled on foot. (Raffo BC, Dkt. 44, at 00:59–1:02; Raffo Dep., Dkt. 50-1, at 23; Pl.'s Dep., Dkt. 44-6, at 29.) At some point within the next month, around August 2021, charges were filed against Plaintiff in connection with this incident, Plaintiff turned himself in to the police, and he was released and given a court date. (*See* Musayev Dep., Dkt. 44-7, at 60, 70–71, 80; Pl.'s Dep., Dkt. 44-6, at 35–36.)

## II. Procedural History

On October 27, 2022, Plaintiff filed the Complaint in this case against New York City, the New York City Police Department, Officer Musayev, Officer Raffo, Detective Kevin Winters, Detective Jason Roemer, and NYPD Officer John Does #1–10 alleging, *inter alia*, violations of his rights under Section 1983. (*See* Compl., Dkt. 1, ¶¶ 52–63.) At a November 3, 2025 Pre-Motion Conference, Plaintiff agreed to withdraw certain claims and defendants from his Complaint and filed an Amended Complaint on December 5, 2025 (and a corrected version of the same on December 18, 2025). (11/03/2025 Min. Entry; Am. Compl., Dkt. 45 (stricken); Am. Compl. Dkt. 48 (corrected).) Plaintiff's Amended Complaint alleges that New York City, Musayev, and Raffo committed various violations of Section 1983 and state law. (*See* Am. Compl., Dkt. 48.) Relevant here, Plaintiff charges that Raffo failed to intervene "to prevent the violation of Plaintiff's Constitutional rights" by Musayev's alleged excessive use of force. (*Id.* ¶¶ 36–46.) Plaintiff raises no other claims against Raffo. (*See generally* Am. Compl., Dkt. 48.)

In December 2025, Defendants moved for partial summary judgment solely on Plaintiff's failure-to-intervene claim against Raffo. (*See* Defs.' Mot. Summ. J., Dkt. 44; Defs.' Mem. Supp. Mot. Summ. J. ("MSJ"), Dkt. 44-3, at 1.) The Motion was fully briefed on March 2, 2026. (*See* Pl.'s Mem. Opp'n MSJ ("Opp'n"), Dkt. 50-5; Defs.' Reply Supp. MSJ, Dkt. 51.)

## LEGAL STANDARD

A movant is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986). The moving party bears "the burden of showing that there is no genuine issue of fact." *Liberty Lobby*, 477 U.S. at 256.

"Once the moving party demonstrates that there are no genuine issues of material fact," the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *See Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009) (alteration in original) (citations omitted). The nonmoving party cannot avoid summary judgment simply by relying on "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted), and must offer "some hard evidence showing that its version of the events is not wholly fanciful," *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

In determining whether a genuine dispute of material fact exists, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d

Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see id.* at 378–80 (holding that plaintiff's version of facts should be discounted, even on summary judgment, because it was contradicted by video evidence).

**DISCUSSION**

**I. Elements of Failure-To-Intervene Claim**

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer is liable for failure to intervene where "that officer observes or has reason to know: (1) that excessive force is being used [or will be used]; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson*, 17 F.3d at 557 (internal citations omitted); *see also Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be." (citing *Anderson*, 17 F.3d at 557)). Pertinent here, there also "must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d at 557 (citation omitted). "The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a 'tacit collaborator' in the unlawful conduct of another." *Figueroa v. Mazza*, 825 F.3d 89, 107–08 (2d Cir. 2016) (citation omitted). Particularly relevant is the duration of the use of force, but there is no "hard-

and-fast temporal cutoff."[8] *Id.* at 107. Other relevant facts include whether a defendant had verbal or visual notice that another officer would use force,[9] the physical positions of the parties at the time,[10] and the degree of activity and commotion.[11] Ultimately, "realistic opportunity" is a question of fact and therefore is often decided by a jury at trial, "unless, considering all the

---

[8] *See also Mercedes v. City of New York*, No. 22-1776-CV, 2023 WL 8594055, at *4 (2d Cir. Dec. 12, 2023) (summary order) (determining that a jury could not reasonably infer that a defendant had an opportunity to prevent excessive force because it happened too quickly); *Scoma v. City of New York*, No. 16-CV-6693 (KAM) (SJB), 2021 WL 230295, at *11 (E.D.N.Y. Jan. 22, 2021) (compiling cases granting summary judgment to officers on failure-to-intervene claims because of rapid sequencing of events); *Buchy v. City of White Plains*, No. 14-CV-1806 (VB), 2015 WL 8207492, at *3–4 (S.D.N.Y. Dec. 7, 2015) (finding dispute of fact as to failure to intervene where plaintiff stated that one officer punched and kicked him for two minutes and another was present and did not stop him).

[9] *See, e.g.*, *Burks v. City of New York*, No. 17-CV-0177 (ARR) (RLM), 2018 WL 6199550, at *6–7 (E.D.N.Y. Nov. 28, 2018) (finding relevant the fact that an officer gave a warning statement and comparing the case to "the many others where a single instance of physical violence was *not* preceded by a verbal warning that the defendant intended to use force against the plaintiff"); *Crockett v. City of New York*, No. 11-CV-4378 (PKC), 2015 WL 5719737, at *7 (E.D.N.Y. Sep. 29, 2015) (finding this fact relevant to failure to intervene).

[10] *See, e.g.*, *Figueroa*, 825 F.3d at 107 (discussing "relative placement" of officers as pertinent to realistic opportunity); *Corley v. Shahid*, 89 F. Supp. 3d 518, 524 (E.D.N.Y. 2015) (explaining that a "factfinder cannot find a failure to intervene, for example, where a police officer is 50 feet from his partner when his partner throws a single punch"); *Pattiasina v. Sewalt*, No. 12-CV-6170 (FPG), 2015 WL 5725139, at *2 (W.D.N.Y. Sep. 29, 2015) (granting summary judgment on failure-to-intervene claim where defendant was "five to seven feet behind" another officer who suddenly kicked the plaintiff); *Knighton v. Hartman*, No. 3:21-CV-0765 (KAD), 2023 WL 8372850, at *6 (D. Conn. Dec. 4, 2023) (assessing "the officer's presence and proximity" to the use of force when assessing failure-to-intervene claim); *Jude v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 24-CV-8916 (PMH), 2026 WL 1256859, at *5 (S.D.N.Y. May 7, 2026) (similar).

[11] *See, e.g.*, *Figueroa*, 825 F.3d at 107 (discussing "the environment in which [the officers] acted" as relevant to realistic opportunity); *Farmer v. Barret*, No. 3:19-CV-1950 (AWT), 2022 WL 2105843, at *8 (D. Conn. June 10, 2022) (concluding there was no realistic opportunity to intervene because there was "a lot of activity" during the relevant period including an ongoing struggle between both officers and the plaintiff in a small room while other individuals were trying to enter the room); *Pesola v. City of New York*, No. 15-CV-1917 (PKC) (SN), 2017 WL 3836055, at *4 (S.D.N.Y. Aug. 31, 2017) (granting summary judgment based on qualified immunity on failure-to-intervene claim where "the immediate area in which the [force] took place—where the boisterous crowd mixed with the police line—was chaotic").

evidence, a reasonable jury could not possibly conclude" that there was a realistic opportunity to intervene. *See Anderson*, 17 F.3d at 557 (citation omitted); *see also Douglas v. City of New York*, 730 F. App'x 12, 17 (2d Cir. 2018) (summary order) (reversing grant of summary judgment to officers on failure to intervene because, based on video and other evidence, a reasonable jury could conclude that officers had enough time to stop their colleague from using excessive force).

## II. Summary Judgment Is Warranted Based on the Undisputed Factual Record

The Parties have narrowed their dispute over the failure-to-intervene claim solely to the question of "realistic opportunity," and therefore the Court assumes *arguendo* that Plaintiff has established the need for intervention. (*See* MSJ, Dkt. 44-3, at 5–6; Opp'n, Dkt. 50-5, at 4–6.) Plaintiff insists that there is a genuine dispute of material fact as to whether Raffo had realistic opportunity to intervene because "[a]t the time Defendant Musayev unholstered his taser, he was in Defendant Raffo's line of sight." (Opp'n, Dkt. 50-5, at 5.) The Court disagrees.

Even assuming *arguendo* that Raffo saw Musayev unholster and draw his taser,[12] based on the undisputed record, no reasonable jury could find that Raffo had a realistic opportunity to intervene based on the speed at which events unfolded, the location of the parties, and sequence of

[12] The Court notes that while the undisputed record does not support Plaintiff's claim that Musayev drew his taser while in Raffo's line of sight, given the existence of gaps and inconsistencies in the record and the inconsequentiality of this fact, the Court assumes for the purpose of summary judgment that there exists a genuine factual dispute as to when Raffo saw Musayev draw his taser. (*See* Pl.'s 56.1, Dkt. 50-4, ¶ 9 (agreeing that "Musayev was not holding a [t]aser immediately upon opening the door of the vehicle"); Raffo BC, Dkt. 44, at 00:52–57 (Raffo's body camera footage not depicting what Musayev did immediately after exiting the police car and instead showing Raffo exiting the car); *id.* at 00:58 (Raffo's body camera footage showing Musayev outside the vehicle with his taser already drawn and pointed at Plaintiff on the ATV); *see generally* Raffo Dep., Dkt. 50-1 (not describing where she had placed her body camera that day); *id.* at 27–28 (testifying that she saw Musayev "draw his [t]aser" when Plaintiff "was getting off the [ATV] to run on foot").)

events.[13] *See Burks*, 2018 WL 6199550, at *7 ("The central inquiry [of a failure-to-intervene claim] is not only whether the defendant had *notice* of an impending constitutional violation but, rather, whether that notice provided [them] with the time, ability, and opportunity to do something before the violation had already occurred."). Raffo could only have seen Musayev *draw* his taser in the four-second window between when he opened the car door and when the body camera shows him with his taser drawn outside the vehicle. (*See* Raffo BC, Dkt. 44, at 00:54–58; Pl.'s 56.1, Dkt. 50-4, ¶¶ 9, 10.) And Musayev fired his taser approximately one or two seconds after the body camera shows him with his taser drawn. (*See* Defs.' 56.1, Dkt. 44-1, ¶ 19 (asserting that Musayev fired his taser at approximately 00:58 in the body camera footage); Pl.'s 56.1, Dkt. 50-4, ¶ 21 (asserting that Musayev's taser was fired at timestamp 00:59 in the body camera footage).)[14] Nothing in the record suggests that Musayev gave any verbal indication that he would draw his

[13] Because the Court grants summary judgment on this basis, the Court does not address Defendants' alternative argument that Officer Raffo is entitled to qualified immunity. (MSJ, Dkt. 44-3, at 7–8.)

[14] Furthermore, it is unclear whether Raffo merely seeing Musayev draw his taser qualifies as "notice" that Musayev would fire it. *See Buchanan v. West Whiteland Township.*, No. 08-CV-0462, 2009 WL 54949, at *4 (E.D. Pa. Jan. 7, 2009) (explaining that despite multiple officers having tasers pointed at the plaintiff, the non-intervening officers had no reason to know that one officer would deploy taser); *Merrill v. Fell*, No. 23-7018, 2023 WL 8827665, at *3 (10th Cir. Dec. 21, 2023) (unpublished) (holding that a complaint did not plead a failure-to-intervene claim where an officer pointed a taser at the plaintiff's back for at least 15 seconds before firing without warning, as "simply pointing the taser . . . did not necessarily put [the defendant officer] on notice" that the taser would be fired); *see also Crockett*, 2015 WL 5719737, at *7 (explaining that, although one defendant "arrived at the scene [when] she saw two officers with their guns drawn," the guns were fired "without notice or warning"); *but see Jackson ex rel. Z.J. v. City of Middletown*, No. 3:11-CV-0725 (JAM), 2017 WL 2218304, at *1, *6 (D. Conn. May 19, 2017) (denying summary judgment on failure-to-intervene claim and finding that defendant-officer had sufficient notice of potential taser use where defendant saw another officer wrestle plaintiff to the ground, "remove his taser and prepare the taser for drive stun mode" and "then deploy[] his taser on [plaintiff's] chest area without warning, eventually tasing [the plaintiff] at least six times all over his body," but for "only a few seconds"). The Court need not resolve this issue because, as discussed below, even if seeing Musayev draw his taser did provide Raffo sufficient notice that Musayev would fire his taser, there still was no realistic opportunity for Raffo to stop him.

taser and fire it. (*See* Pl.'s Dep., Dkt. 44-6, at 27–28 (not recalling any facts to this effect); Musayev Dep., Dkt. 44-7, at 87 (same); Raffo Dep., Dkt. 50-1, at 24, 33 (same).) Raffo therefore had between approximately one to four seconds to stop Musayev from firing the taser. *See supra* pp. 8–9 (explaining that it is undisputed that Musayev drew his taser at some point in roughly a four-second period and fired it approximately one second later). Raffo could not have physically intervened in this span of time. Moreover, when Musayev drew his taser and fired it, Raffo was in the process of exiting the car and walking over to Plaintiff. Ten to fifteen feet, along with the police car, separated Raffo from Plaintiff and Musayev. No reasonable jury could find that, in less than five seconds, Raffo could have crossed this distance, gotten around the police vehicle, and disarmed Musayev. *See Crockett*, 2015 WL 5719737, at *7 (determining that an officer did not have a realistic opportunity to intervene where she drove to the scene and saw another officer with their gun drawn, and as she exited the car, the other officer, who was several feet away, shot the gun "in rapid succession and without notice or warning"); *Raffaele v. City of New York*, 242 F. Supp. 3d 152, 158 (E.D.N.Y. 2017) (determining officers did not have realistic opportunity to intervene where they were six to ten feet away from the officer who used force in two seconds).

For similar reasons, Raffo had no realistic opportunity to verbally command Musayev to not use force, which Plaintiff argues she should have done, (*see* Opp'n, Dkt. 50-5, at 5). Although "[o]ne method of intervention is by verbally commanding or directing the other officer to stop using the force that is excessive," an officer is only obligated to take this step "if [s]he is in a position where [s]he can reasonably do so." *Jackson v. City of Atlanta*, 97 F.4th 1343, 1362 (11th Cir. 2024) (citations omitted); *see Portillo v. Webb*, No. 16-CV-4731 (VEC) (GWG), 2022 WL 2337380, at *12 (S.D.N.Y. June 29, 2022) (describing opportunity to "verbally attempt to stop [use of force] *given sufficient time to do so*" (emphasis added)), *report and recommendation*

*adopted*, No. 16-CV-4731 (VEC) (GWG), 2022 WL 16736980 (S.D.N.Y. Nov. 7, 2022). There was no such opportunity here. In addition to the sheer speed at which the events occurred, the scene was far from static. As the officers approached, Plaintiff mounted his ATV, started it, and crashed into the Fed-Ex Truck[15]—all in a matter of seconds. Even construing the facts in the light most favorable to Plaintiff, the level of chaotic activity and the speed at which the events occurred simply did not provide Raffo with enough time to react and intervene. *See Crockett*, 2015 WL 5719737, at *7; *Wright v. Trapasso*, No. 15-CV-4428 (MKB), 2018 WL 4688940, at *10 (E.D.N.Y. Sep. 28, 2018) (granting defendants' motion for summary judgment on a failure-to-intervene claim because the officer could see the actions of others but the quick nature of the events prevented him from intervening); *Bradshaw v. Welch*, No. 9:21-CV-0826 (ECC) (PJE), 2026 WL 1041785, at *8 (N.D.N.Y. Feb. 9, 2026) (granting summary judgment on failure to intervene where "the incident occurred in fewer than five seconds and there is nothing to suggest that [a defendant] would have been able to react quickly enough to [intervene]" (citation omitted)), *report and*

[15] As noted, Plaintiff acknowledges that he started the ATV and hit the FedEx truck, but claims to have done so *after* Musayev discharged the taser. (*See* Pl.'s Dep., Dkt. 44-6, at 29–30.) However, the body camera footage and undisputed facts of the record contradict Plaintiff's claimed timing. The body camera does not show Plaintiff crashing the ATV into the FedEx truck after the taser is fired. (*See* Raffo BC, Dkt. 44, at 00:58–1:02 (depicting tasing after Plaintiff was already on the ATV, followed by Plaintiff's flight on foot).) And, as explained, Defendants have presented evidence—which Plaintiff does not dispute—that Musayev's taser could—and did—only fire once. Plaintiff's claim that "[t]he purported evidence does not support" the fact that Musayev deployed his taser one time at about 00:58 in the body camera footage, without citing to any evidence to the contrary, (*see* Pl.'s 56.1, Dkt. 50-4, ¶ 19), is insufficient to establish a dispute of material fact. *See U.S. Sec. & Exch. Comm'n v. Saw*, No. 23-CV-6573 (PGG), 2025 WL 2105903, at *6 (S.D.N.Y. July 25, 2025) ("[A] party's 'unsupported denials . . . cannot, without citation to any evidence in the record, create a genuine issue of fact.'" (quoting *Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011))). Thus, based on the undisputed facts and video testimony, Plaintiff crashed the ATV into the FedEx truck prior to being tased. But even if the Court was to adopt Plaintiff's sequencing of events, the result would be the same as to Plaintiff's failure-to-intervene claim; Raffo still would not have had a realistic opportunity to prevent Musayev from tasing Plaintiff.

*recommendation adopted*, No. 9:21-CV-0826 (ECC) (PJE), 2026 WL 587707 (N.D.N.Y. Mar. 3, 2026); *cf. Wolak v. Town of Old Saybrook*, No. 3:23-CV-0734 (AWT), 2025 WL 2480919, at *13 (D. Conn. Aug. 28, 2025) (finding no failure to intervene where plaintiff was moving and situation was "fluid and rapidly evolving"); *Pesola*, 2017 WL 3836055, at *4 (granting summary judgment on failure-to-intervene claim where "the immediate area in which the [force] took place—where the boisterous crowd mixed with the police line—was chaotic").

Finally, Raffo could not intervene once Musayev started to fire his taser. The undisputed record establishes that the discharge of the taser lasted approximately one second. (*See* Defs.' 56.1, Dkt. 44-1, ¶ 19; Pl.'s 56.1, Dkt. 50-4, ¶ 21; Raffo BC, Dkt. 44, at 00:57–00:58.) As discussed, this was too fleeting for Raffo to act or intercede. *Compare Est. of Richards ex rel. Stephens v. City of New York*, No. 1:18-CV-11287 (MKV), 2024 WL 3607220, at *12 (S.D.N.Y. July 31, 2024) (concluding that "there was . . . no realistic opportunity for any of the officers to potentially intervene to stop [another officer] from tasering [the decedent], because [that officer] fired a taser at [the decedent] once for a period of less than two seconds"), *with Paul v. City of New York*, No. 16-CV-1952 (VSB), 2023 WL 3724152, at *11 (S.D.N.Y. May 30, 2023) (denying defendants summary judgment on failure-to-intervene claim because the decedent was "tasered multiple times over several[ ]minutes" and therefore other officers had time to intervene).

In sum, the undisputed record demonstrates that no reasonable jury could find that Raffo had the opportunity to intervene during the brief period of time—less than five seconds—between when Musayev drew his taser and fired it. Plaintiff does not point to anything in the record to suggest the contrary, and the Court cannot deny summary judgment based on speculation that favorable evidence will emerge at trial.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Partial Summary Judgment on Plaintiff's failure-to-intervene claim. The Clerk of Court is directed to terminate Defendant Raffo from this action.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 18, 2026
Brooklyn, New York